HARRIS, Judge.
Appellant was convicted of burglary in the second degree and sentenced to a term of four years in the penitentiary. At arraignment, with his counsel present, he pleaded not guilty. After sentence was imposed, he gave notice of appeal. He was found to be indigent and a free transcript was furnished him. Trial counsel was appointed to represent appellant on appeal.
*211 Mrs. Maude Hicks testified that on November 21, 1974, she and her son, Edgar M. Hicks, were living in her house at 133 East North Street in Dothan, Houston County, Alabama. On the afternoon of that date she and her son left home between 2:30 and 3:00 p. m. and returned home around 4:00 p. m. that same afternoon. Before leaving home they locked all the doors and windows. When they returned home, they found a bedroom door opened which was closed when they left the house earlier. The French doors leading into the living room were open. They went to the back porch and found the back door wide open. The window behind the back door was open and the screen was cut and torn off and the lock had been cut or broken.
She and her son started looking through the house to see if anything was missing. Mrs. Hicks discovered her digital clock radio was missing and her son’s shotgun was also missing. She stated that the clock had a unique or peculiar feature about it in that when the hour reached 4 o’clock, the four turned to an “H”. Mrs. Hicks later identified her clock when it was brought to her house by Sergeant Larry Lynn of the Dothan Police Department. Mrs. Hicks valued all of the property taken from her home to be over twenty-five dollars.
Edgar M. Hicks, Jr., testified that he was living with his mother on November 21, 1974. He corroborated his mother’s testimony concerning the condition of the house before they left and the condition it was in when they returned. He also confirmed her testimony as to the missing property. He stated the shotgun was a Winchester 16 gauge single shot and belonged to him. He later saw and identified the shotgun when Sergeant Lynn brought it to his house. He valued all the stolen property from his mother’s home to be in excess of $25.00, and that the gun and clock were worth at least $40.00.
Mr. James Emfinger testified that he was the owner of Stough Street grocery store in Dothan and that on Saturday, November 23, 1974, appellant came to his store and told him he had a gun he wanted to sell. Emfinger told appellant he didn't need a gun but appellant insisted that he look at the gun. They went outside and appellant opened the car door and got the gun and handed it to Mr. Emfinger. As Mr. Emfinger was looking at the gun, some police officers drove up and asked appellant if that was his gun and appellant said it was not his gun and gave the officer some name as the owner. Mr. Emfin-ger said there was another man with appellant but he did not know him. He had seen appellant before and made a positive in-court identification of appellant as the man who brought the gun to his store.
Mr. Robert Jackson was employed as a police officer with the City of Dothan on November 23, 1974. He was on patrol duty on that date and had a partner with him by the name of Lewis. This officer knew appellant. He stated they were patrolling Stough Street and saw appellant, a man by the name of Connie Fish, and Mr. Emfinger standing next to a car and one of them was holding a shotgun Up. The officers stopped their patrol car and got out and walked to where these men were standing with the shotgun. Officer Jackson asked who owned the shotgun and appellant said it belonged to him and he was trying to sell it. Jackson told appellant the gun fitted the description of one that had been reported stolen, and he would like to take the gun and check it out and appellant then said the gun did not belong to him— that he did not own it. He further stated that the gun belonged to a man named Blackman. Officer Jackson said he would like to check it out and they started to the patrol car with appellant. Officer Lewis was in front, appellant was behind Lewis and Officer Jackson was behind appellant. Just as they got to the patrol car, appellant made a break and started to run away. He only made a few steps when Officer Jackson apprehended him. He was then and there advised of his constitutional *212 rights, arrested and put in the patrol car, and transported to the police department. Officer Jackson turned the shotgun over to Sergeant Lynn and said it was in the same condition as when he received it from appellant.
On cross-examination Jackson was asked if appellant didn’t tell him that the gun belonged to Billy Joe Walker and he said, “No, he didn’t.”
Sergeant Larry Lynn of the Dothan Police Department testified that he was assigned to do some additional investigation in connection with the reported break-in of the home of Mrs. Hicks. That on November 23, 1974, he went to the home of Judge Hall at 910 Whiddon Street. He knew that Judge Hall was appellant’s father-in-law. He asked Hall if appellant lived there and Hall stated that he stayed there off and on. He asked Hall if he could look in the house for some items taken during a burglary, specifically, a radio and a shotgun and Hall consented for the officer to search his house and signed a consent form.
On voir dire Lynn testified that he found the radio in the bedroom. In the room at the time was appellant’s wife and he did not ask appellant’s wife if he could search the room as he already had the written consent to search from the owner of the house. He further testified that appellant’s wife had just gotten out of the hospital with a newborn baby and was just staying with her parents. Hall told Lynn that appellant did not stay there regularly, but he was in and out.
The trial court stated he wanted to hear from Judge Hall. Hall testified that he lived at 910 Whiddon Street and he owned the house. He was buying the house and paying on it at the bank. He stated that his daughter was staying there temporarily because she just had a baby. That she and her husband had a house across town. That she and her husband were not residents in his home and that they did not pay him any rent for the use of the bedroom. He said before she had the baby, they were not living there.
The Court asked this witness if he or his wife had any personal belongings in that room and he stated he had two or three suits that belonged to him in that room and that his wife had some clothes in there, too.
The Court continued to question Judge Hall as follows:
“Q You say Adam stayed there in that room sometimes and stayed with his mother sometimes?
“A Yes, sir.
“Q He didn’t pay you any rent ?
“A That’s right.
“Q Did your daughter, Adam’s wife, pay you any rent ?
“A No, sir.
“Q Did you give those policemen your consent — did you allow them to go in the room and search it that day?
“A Yes, sir.
“Q You gave Detective Lynn the right to go in there?
“A Yes, sir.
“Q Did your daughter give him permission to go in there and search ?
“A She did after I went back and told her the law wanted to investigate back there.”
Sergeant Lynn was recalled and testified that when he was standing and talking to Judge Hall, the door to the bedroom was open and his attention was attracted by the light on the digital dial of the clock radio. That he did not push the door open saying, “I never did touch it.”
From the record:
“THE COURT: Without you touching the door and pushing it open, and walk *213 ing in the room, you could see the digital clock?”
“A. Yes, sir, we were standing in the doorway and he said, ‘You can search my house anywhere you want to.’ ”
“THE COURT: You knew that a digital clock had been taken in this burglary that you were investigating ?
“A. Yes, sir.”
The motion to suppress was overruled.
Sergeant Lynn then testified before the jury that after receiving permission from Judge Hall to search the house, he found the digital clock radio. He took the clock to Mrs. Hicks and she identified it as the one taken from her home. The shotgun that Sergeant Lynn received from Officer Robert Jackson was shown to Edgar Hicks and identified by him as his gun and the gun that was taken in the burglary.
Appellant testified that he bought the clock and shotgun from Billy Joe Walker. He admitted that he told Officer Lynn that he bought the clock and shotgun from a man by the name of James Blackman. He stated that he didn’t know a James Black-man and just made up that name.
Appellant contends that the evidence seized in this case, a digital clock radio, was the result of an illegal search and seizure and should have been excluded from the evidence.
In overruling the motion to suppress, the trial judge said:
“THE COURT: The detective says he could see the digital clock from the living room, where he was standing. I am not convinced this defendant and/or his wife had the exclusive occupancy of that bedroom. They were guests, in my opinion, in that home and had the right, by his permission, to use that bedroom. They certainly didn’t have the complete and exclusive rights, or dominion or control over that bedroom, because the defendant, or the wife or some of the other children had clothes in there, and by this defendant’s own testimony, his brother-in-law came and went from that bedroom and had the right to use it. I think he was a guest in the home and that Mr. Judge Hall had dominion and control over that house and I think he had the right to give the police permission to search it, if, in fact, he did get permission. At this point, I am going to overrule your motion.”
That Judge Hall was the owner of the house that was searched is clear from the evidence. He gave Officer Lynn permission to search anywhere in his house. We hold that the consent to search was unequivocal and specific, and was freely and intelligently given. There was clear and positive testimony that Judge Hall consented to the search. Courts throughout the country have consistently held that searches without warrants are constitutionally permissible when executed with the owner’s consent. Hardy v. State, 53 Ala.App. 75, 297 So.2d 399; Myers v. State, 55 Ala. App. 404, 316 So.2d 235; Hernandez v. State, 50 Ala.App. 558, 280 So.2d 831; Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854; United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242.
We find no error in the record and the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.